Thank you. Be seated. Again, for those who may have not been with us for our first case, thank you for being here today. You're taking part with us today. As you can see, we've changed the panel out a little bit. Next to me I've got Justice Barry Vaughn. Again, I've got Justice Randy Moore. And for those of you that weren't here, I'm Mark Bouie. I'm the presiding justice and have that honor and privilege to serve as their presiding justice of the Fifth District Appellate Court. Our second case today, if I pronounce this correctly, is Leahy et al. v. City of Carbondale. Again, before we get started, I'm going to ask counsel if they could please stand and introduce yourselves to our students today. I'll start with counsel here to my left. I'm Steve Giacoletto. I represent the City of Carbondale in the Appellate United States. Thank you, counsel. Good morning, everyone. I'm Patrick Murphy and I represent the appellate court. And as I stated, I don't think Mr. Giacoletto went to school here, but I believe both counsel here went to SIU. I kind of have that reoccurring theme pointing out all of our, the justices, the attorneys, staff, other people that I'll introduce here in a little while, all have a tie to the law school here. So I know I speak for all of them when I say, again, we appreciate your being here and we are happy to be able to bring the oral arguments to you today. With all that being said, counsel, are you ready to proceed? I am ready, Your Honor. Then go right ahead. May it please this honorable court and Mr. Giacoletto and, of course, my co-counsel, Mr. Mayberry. Your Honors, I've been coming and arguing cases in front of this court for 43 years. And accordingly, I know that you have read the briefs and know the record and probably discussed it with the clerks. I also know that some of you have been on the similar cases that are involved. I only say that to say this. I'm not going to waste your time. I have just a few points to make. And in doing so, we will avoid the teejum that you sometimes experience when you have to go through the entire record. So my first point is that today we're talking about fees. Fees that are imposed under a two-tiered system, an ordinance promulgated by Carbondale that I have attacked or challenged in this action. Now, it's important to note that after the Salad Reagan case, the legal issue of whether these are fees or not is off the table. But that remains important for two reasons. Because we're not talking about fines, the courts take a harder look at what is a reasonable fee. We're not here to punish anybody. We're charging a member of the public a fee for impounding and removing a vehicle. Mr. Murphy, under the Carter case, the fee does not have to be dollar for dollar what it costs the City of Carbondale to process one of these cases. Is that correct? That is absolutely the case. And I was going to hit my conclusion today to suggest to the Court that you not follow the appellee's counsel and be tempted to look at and pay attention to the Carter case. Because I think the Carter case informs the disposition of this case. It was different, though. In the Carter case, it was pretrial motions. There was a motion to dismiss, and there was no evidence presented, really. There was just the pleadings. In this case, there was a hearing. There was a bench trial with two days of testimony, and a record developed that showed what the actual costs were. That's exactly right. You have read the record, and you can see the extent to which I put on evidence to show what was actually involved in this case. One thing on the record concerned me. At the closing argument, you argued at Record 202 that if Carbondale had assessed a cost of $350 instead of $400, it might have been constitutional. So was this about a $50 difference in the price? Not at all. That's a really, and I picked that up in the brief and addressed it in my reply brief. The judge asked me a hypothetical question, and he said, if there was no stipend from the state to assist the city in prosecuting these DUI cases, but carrying out their DUI program, and if the actual cost were $350, would that be constitutional? I said, well, sure. I mean, $50 is close enough. But, in fact, there is a state statute that gives Carbondale the money for the very same thing that they're charging for these DUI impoundments. It's not exactly the same thing, though, is it? Because the state fee has very specific things on what it can be used for. The Carbondale ordinance, there's a little bit of overlap on training of officers, but there's also other things that can be used. The state fee is for breathalyzers, for cars, for training, for other things. The ordinance is broader or covers more areas. Isn't that correct? You know, actually, the ordinance itself, if you look at it, the money is not used at all to cover the administrative processing cost. They just put it into, I think it's subsection G of the ordinance, and they use it for vehicles, for everything. In other words, these people who are paying this fee for a service are supporting the entire police department, not just related to the DUI program, the DUI money having already come in. And that's the reason that I spend some time saying money is fungible. But it's not entirely funding the police department. It's just impound vehicle cases, right? Well, the impound vehicle cases, let's just say on a DUI like my client here, Mr. Lehi, he takes the money. He pays it. He pays the $400 impoundment fee. It goes into Carbondale. They put it in a restricted account, and they just purchase vehicles and equipment with it. That exact same thing is covered under the state stipend, the very same thing. And that's one of the things that I say, that this particular ordinance is right on its face unconstitutional because it was promulgated without even a nod to the existing state law. I mean, the city council was never told that they were getting this money from the state. This is not a fee. This is just a revenue enhancement. So, yes, those questions are apt, and I hope I've answered them for you. Under the record, what is the cost to the city of Carbondale to employ a police officer? I saw different figures, some $33,000, some $42,000. Well, the officer said they make $31 an hour. And the judge said, well, actually, the all-in cost because we pay their social security and retirement is $42 an hour. But I don't think that. I'm fine with that. There's no way I'm going to argue whether it's a $30 an hour for a police officer or $40 an hour because, and that was my second point, the ordinance itself tells us what it is for. It is for to recoup the cost of the impoundment and the removal of vehicles for certain traffic offenses. That is constitutional. Everything else that these officers do, they do in every case. I mean, you have to investigate cases. You have to arrest people. Now, just think of what happens, and this case is a good example. A guy's coming out of Carbondale. He's speeding. It's late. It's late or early in the morning. He's got a young lady with him. He's in a hurry. He gets pulled over. The officer sees that he's had too much to drink. He's arrested right there. His vehicle is seized right there. His vehicle is removed. He's taken to the police station. You know, maybe an hour, that's for two officers. One officer was there for 30 minutes. The officer that assists, that sees to it that the vehicle is removed, that's the way it always is. I mean, all this talk about these serious crimes has nothing to do with the impoundment and the removal of a vehicle. Now, you can see where the whole thing went wrong. We've got the purpose, the very purpose for the ordinance, and then at that time we have the cost estimates. Well, my God, in these cost estimates, they're including the cost to prosecute the case, the cost to fill out all the reports. I mean, it's massive. But it has nothing to do with the purpose of the ordinance in the first place. This is a fee. It has to be reasonable. We don't have to get to the question of whether the statute's constitutional because the statute fits perfectly with the fee itself. You have to arrest a traffic violator before they seize their car. Well, what does that amount to? Not much. We have the testimony of the officers that do that. You're talking about an hour or two at tops. Mr. Murphy, when you're making a facial argument, though, as opposed to an as-applied, if they can show even one case where the fees jive with the cost, then does the one case defeat your argument on a facial argument? No. And two things about that. They didn't. I'm the only person that brought a real witness to the trial and testified what happened. I called all the officers under as adverse witnesses, and they all said that Mr. Lee's case was typical. Now, granted, the next day they said, well, some cases are more complicated than others. But that never changes things. Because once the vehicle is impounded and removed, we're done. I mean, all the other things, if they want to charge somebody with any crime, they have to fill out their papers, do their further investigation. You can't assess that on the owner of a car. It's unconstitutional for that reason. Now, and that's the first reason. But the second reason is this ordinance on its face is unconstitutional in every instance because it doesn't take into account that with respect to the level one charges that are DUIs, it doesn't account for the state stipend. And in Carter, this court said you have to take that into account. The state's given them the money to carry out their DUI program. But even more important, I think, look at the non-DUI level one $400 charges. Here's what happened. During most of this case, we were arguing about whether this was a fine or a fee. And as a part of that, the city of Carbondale took the position, you can read it at C-100, that we know these are fines, not fees. We know it because we charge the same thing for a level one $400 impoundment that we do for a level two $200 impoundment. There is no difference between the effort required by the police. They do exactly the same thing. But if that's correct, if the state fee, the statutory fee is already covered, why did the state adopt 705.135.15-30, allowing municipalities to adopt these ordinances to recoup some of their costs? Well, they didn't tell them what to charge. They just made it clear that there's nothing wrong with a municipality, a home rule municipality having one of these. They didn't tell them how to charge for it. I mean, you would assume, maybe we shouldn't at this point in our history, that the government would not take advantage of its own taxpayers and charge them for something that's never been provided. Surely that wouldn't happen. But that's exactly what happened in this case. Look, there's no question that the state of Illinois, if they want to charge $3,500 or $5,000 to an offender for a DUI, they can do that. That's punishment. But that's not what this is about. This is leveled against the owner of the vehicle, a perfectly innocent person, to get their car out of hock. What service did this person get? Well, the service is the police came out. They seized the man's car, whoever was driving it. They called the record service and pulled it away. And it's like that in every case. All of these cases that you --I don't know if you got to read the entire record, but, my God, there was a case where a kid was killed. Very serious case. But the driver was arrested, and the vehicle was towed within the hour. There was a shootout in Carbondale, or a weapons charge. I keep calling it a shootout. It's just a weapons charge. Well, they arrested the driver of the car, and the car was seized within an hour. Now, interestingly enough, neither one of those cases ever came to fruition. The cases were dismissed for whatever reason, and no one bothered to even recover the cars. So, that's--. Mr. Murphy, counsel for the city talks about Carter, and I'd like to ask you about this Carter v. Alton case. Uh-huh. And he cites, actually, I made a special concurrence on that case, and he cites to that special concurrence and says that because it was decided on the pleadings, it's not authoritative in this case. And you're arguing that it is. So, would you explain to us why? Well, yes. The principles themselves are instructive. There is no question that your concurrence was spot on. I mean, we don't know what's going to happen when you actually look at the evidence. But we did in this case. But the principles are fairly straightforward. That's a big difference from the Carter case to this case. We have evidence. We actually have a trial in this case. And in my case, in this case, I proved, if not beyond a reasonable doubt, almost to a fairly high standard that this fee is just, it can't be sustained. There's no basis. There's just no basis for it. The only way that you can make this fee constitutional is hold it to its purpose. And this, your court has said several times, you measure the ordinance against the purpose for which it's there. Well, it's right there. It's right there. And when the ordinance was adopted in 2012, I think it's Exhibit 4 in his appendix, and I've also put it in my appendix, to recoup the cost of the seizure and the removal of vehicles. I agree with that. I don't argue with it. That is a very slight cost. But to conflate a Level 1 fee with a Level 2 fee and charge one person $400 and another person $200 for the very same service makes no sense at all. And it's Carbondale that said that, not me. I proved it, but they're the ones that argued it. Well, there's no question about the findings of Judge Fiello's order before this court. I'm aware. I'm saying give him his . . . Nobody's appealing the findings of the . . . No, I'm saying give him his findings. He's just charging for what's not recoverable under the ordinance. And I want to say, and I've said this publicly in private, I think that judge did a fine job. I mean, his findings take him. I mean, but he's charging for things that you just can't recover. And it just makes no sense. It's irrational to charge people different for the very same service for no reason. And the reason was, I think in their mind, they were trying to make it part punitive. But you just can't do that. If you were just doing that to drivers, it would be all right. But the ordinance lays it on the owner. And one other matter, you'll notice in there when you go through it, sometimes the leanor comes in and recovers the vehicle. Just the bank. I mean, what can you say about that? So I think all the principles in Carter are there. I mean, they tell us it has to be unique. It has to be unique to vehicles. That, look, it's a rational basis, but it's not toothless. You take a hard look at it because it's a fee. There are five principles in there. And your concurrence does nothing to cut into those principles. I think what you were doing was just making clear we've got to see what the evidence is. Well, I brought you the evidence. You can look at the evidence. And the evidence is that they were charging and continue to charge for things that are just not recoverable. So I don't think you should be tempted by Carter. I think you should follow your own decision. I mean, every court in the state of Illinois has to look at Carter as being authoritative. Is the gist of your argument then that the carbon ordinance is duplicative of the state statutory fee because they're the same money? Only in the case of DUIs. Okay. Because under Carter, you have to, you have, the court said that if the fees are duplicative, that you can't do that. But the cost for an officer, the salary of an officer is $42,000 to $70,000. The fees collected were considerably less than that. In 2018, the fees carbon had got were $17,369. So if it's not even covering the whole cost for an officer, how can it be duplicative? Judge, I don't understand your question. Would you say that again? I want to answer it. The cost for an officer is anywhere from $42,000 to $70,000, but they're only collecting $17,000 in fees. So it's not even covering the full cost of one officer. Oh, no. They cost $32,000 in impoundment fees for DUIs in 2019 and $36,000 in impoundment fees for non-DUI level 1s and $12,000 in level 2 fees. And that is all in the appendix to my brief. It is their sworn answers to request to admit facts. Is that the money from the ordinance or the money from the statutory fee? That's just the money from the ordinance. That's my point. Then on the statutory fees for the same year, they brought in $13,000 from the state. And they could have gotten more. They just don't bother to try to collect all their fines. But they brought in $13,000. I think I made the point. Go ahead and finish your comment. In my case, that in the case of Mr. Lehigh, for instance, the state collected, I believe I said, eight times the most liberal cost assessment on his case. Thank you, Your Honors. Before we let you go, Counsel, any further questions? No. No other questions. Thank you. All right. Thank you, Counsel. Obviously, you'll be given your time for your rebuttal. Mr. Giacoletto, go right ahead. May it please the Court and counsels as well. Your Honors, this case is about the constitutionality of Carbondale's total fee ordinance and more specific about the facial unconstitutionality, which we talked a little bit about. And as you know, the facial unconstitutionality aspect means that it has to be unconstitutional each and every time. If it is sometimes unconstitutional, that's not enough. If it's most of the time unconstitutional, that's not enough. Either of those scenarios, the plaintiff's case loses, and that's quite a burden on the plaintiff to reach this. I try and find some cases where statutes or ordinances were found facially unconstitutional, and I'm not saying I did an exhaustive search, but I didn't come up with a lot that really had any applicability here necessarily. But they tended to be fundamental rights, constitutional rights, whether it was gun control or COVID or health issues or I think the Safety Act now before the Supreme Court has a facial aspect to it. I did see the one a few years ago, the Supreme Court, where we had six jurors instead of 12. I believe that was facially unconstitutional, but it just kind of gives you a flavor, though, of the bigger, broader scope of what it takes to be a facially unconstitutional. And, yes, they affect the masses. They tend to be looking forward. I think what it is is we have here a facial unconstitutional argument that is not one of the more fundamental liberties at stake here, and it's more of, again, a class action where we're not looking forward, but we're looking at a lot of people's different circumstances, and we're looking to right wrongs in the past type of thing, and I just don't think under that scenario it's very conducive to facial unconstitutionality. You know, the reality of this is I think we have a cost-shifting statute, and to me the statute does come into play, and they are. The ordinance does cite to the statute. Justice, I think you mentioned that. The ordinance does reference the statute, or it was said that they didn't, but they do. And I think it's hard to divorce the two. The language is similar. The purpose is similar, et cetera, et cetera. So, to me, when I'm talking statute ordinance, I'm kind of meaning the same type of thing. But I think what it is is a cost-shifting issue here, and it's rare that you have crimes and you actually get the opportunity to put the cost back onto the violator. I certainly understand, you know, with penalties serve as punishment, penalties serve as deterrence, but that's not a break-even scenario from the law enforcement side. They still have a loss, suffer a loss in these type of cases. You know, here's what I mean by that. If I get a DUI and I'm driving on the road violating the laws of what happened to my vehicle, now my vehicle has to be taken care of. Stopping it, taking care of it, storing it, whatever, getting it off the public streets. And I did all that, and why should you have to pay for that? That's kind of what this is. And so we're just trying to recoup some of the tax money for when it is possible of me putting a dangerous vehicle on the road or acting dangerously with the vehicle and trying to shift that cost back onto the violator. The burden of proof here, a lot of the arguments in the brief and the trial was Carbondale's affirmative defense and us putting on the evidence of how $200 or $400, as the case may be, is reasonable for the expenses involved. But I think more even basic of that, before we get to the affirmative defenses, is, you know, did the plaintiff, you know, meet his burden of proof initially? You know, in the trial, in the record, did Lehi carry his burden of proof in each and every case that $200 was not justified? Did Lehi prove in each and every case that $400 was not justified? I don't think he carried his burden through each and every case and the possibilities. You know, other than Lehi testifying himself, what evidence did he really put in that would apply to everyone else as well? Do you think the Carter case is controlling on this court or do you think it's distinguishable? You know, let me get to my Carter notes. It is distinguishable, and, you know, I'll start with Justice Moore. He had his concurrence in there. Now, you know better than I do, but I read it as a warning that that court at that time should not be given such a broad opinion, a broad decision when there was no evidence taken in that case and that it would cause problems later on, and here we are. I think that's come true. You know, one of the issues in there, the big issue was it was the vehicle being unique to the crime. I can't remember who wrote it, whatever, but in order for the fee to apply, the vehicle had to be unique to the crime and the towing, and I think now that the evidence is in, that's really an error, and when you look at the statute and the ordinance, that's an error. What really matters is about the vehicle and about the vehicle being on the street and in the public and being used to commit a crime and that it now has to be cleared from the scene. It doesn't really matter why the vehicle was used. The fact of it is it was used in a crime and now has to be dealt with. You know, it's also not just about the vehicle because if it was only about the vehicle, then why would the statute and the ordinance also allow compensation regarding the investigation of wrenching, excuse me, investigating, arrest, and detention of the violator? You look at the statute, you look at the ordinance, there's two things they can collect about. One is about the violator and one is about the vehicle itself. If it was only about the vehicle and the vehicle being unique, then we wouldn't have that phrase that allowed some compensation or recoupment of fees related to the violator. It almost seems like the city in their ordinance, though, and in their calculation of fees, they're grabbing any money they can find. They're charging for the Brady operator, they're charging for the assistant officers, they're charging for the initial investigating officer. If there's any inventory guy down, they're charging for that. Anything they can find, they're charging for. How do you justify that? Well, I think that's, you know, a lot of times people, and I think that's when an accountant gets involved, honestly, and they look at the all-in costs and that was a lot of what the trial is. You know, the first reaction is, and you kind of see it in the record in the exhibits early on, it was, oh, well, what does that officer cost? And it's just what his salary is, his hourly rate. And then you find out a lot more people are involved. And then you find out with that officer, his salary, there's a lot more than that, that there's taxes paid on that salary, on that hour that he has to spend, on that three hours he has to spend, that he has huge pension costs, huge health insurance costs. So, quite frankly, as you saw in the trial, you get an all-in cost involved with the accountants, and then you get all the people involved and everybody who's involved in touching it. And you find out it's not so simple as a, you know, one-off math equation of what did one officer cost for two hours? It's not simple at all. I think that kind of bellies into the whole point of, you know, all these are a little bit different, and then that's part of the problem, what you have here is Lee, he was an easy DUI, relatively, if there is one, but he wasn't typical. And Sergeant Mather testified to that. He did hundreds of DUIs, and he said none of them are typical. And I think that's the problem with, you know, in this type of case is they're all a little bit different. Everybody has different circumstances and different hours involved and different situations, and there's a whole slew of these things. The record was a little hard for me to follow on who's doing what because the assistant officer who does the inventory and the towing, they typically take half an hour time, maybe 20 minutes time. But if I read it right, the investigating officer on a DUI at least, there's the initial stop, there's the field sobriety test, he has to wait for backup to show up. That's right. When they go and do a breathalyzer, there's a 20-minute observation period. If I understood it right, the investigating officer is in for a minimum of three hours even on an easy DUI. Well, that's right, and that's even exactly right, and the backup officer is just there as a backup maybe a half hour, hour, depending on the timing of the tow. But that investigating officer does much more, and a lot of times too, and that's what I wrote about a lot of the report writing, how important it is and how much that is part of an administrative cost here is that even if the violator, suspect bonds out and is left, that's not the end of it for the officer. He goes on well after that, finishing up reports and all the paperwork needs to be done. What happens in the contested hearing where somebody files to get their money back? Right. Is that figured into your cost also? That was figured into the brief as well. It was not included as part of it by the judge, although I think that's where the judge, in his wisdom, if you will, was giving it as much favor as he could to Leahy on it, but I also think he probably could have been much harder on it and could have added in a lot of stuff about the report writing and about on those cases where there is an impound fee. Of course, if you had an impound fee hearing, if you had an impound fee hearing and they won and got their money back, then, well, they deserved it back, et cetera, et cetera. But as you can imagine, most of these times you have an impound hearing, you've got the officer there, there's a lieutenant on scene, you've got the city attorney there, and it's all in the brief and outlined. It added in to about another $300 or so, maybe even up to $700 total. Just for the impound? Just for the hearings. Refund hearing? Right, right, right. Do you agree with Mr. Murphy's calculation or the figures he gave? I ask about? My review, at least in 2018, the city got something like $17,000 or $18,000, but he said that was only a small part. He had numbers like $36,000 and $19,000 just on the ordinance fees, not counting the statutory amount. Do you agree with those numbers he had? You know, I don't know. I guess because, you know, that's kind of a detailed question. My gut is I would think the impound fees were more than $17,000, but I guess it depends on the given year. Well, that may have been the statutory fee. It was hard for me to follow. Yeah, yeah. And it is a little – I agree it is hard to figure it out from it, at least trying to reflect back. I would think that the DUI funds were probably less than the impound fees, just because there's – as I was going to touch on earlier, there's a lot of these situations. Perhaps, you know, when we want to say most of it, but the majority of these are not DUI fund cases. The majority are non-DUI fund cases of the TOEFs. So when we – I'm going to compare the statute and the ordinance in a minute. You know, if you have a hit-and-run or reckless driving or suspended license or, you know, some other non-DUI related, there is no duplication of the fee. There is no DUI fund. So I would think that the impound fees are going to be the greater number than the DUI. You agree that, at least in Mr. Leahy's case, the actual cost of the city of Carbondale was considerably less than the ordinance fee? No, because let's say he was the easy one, and that's kind of the one the judge used in a lot of his calculations, what was the Lehigh numbers. And he did the all-in cost, and I think he came up with around $312 or something like that or whatever compared to the $400. Now, again, I go back to the judge did not even include report writing and didn't include, you know, the hearing if there was a hearing in that case. But, you know, there were some other costs that he did not include in it. So in Lehigh's case and in that particular one, at least $312 out of the $400. If my memory serves me right. And that's not including the report writing, which would have been another hour or two. So under Carter, Paragraph 19, it talks about it only has to be related to the number. It does not have to be a dollar-for-dollar exact cost match. $312 would seem to be under Carter, Paragraph 19, to be related to. And even Mr. Leahy's case would be constitutional because you said you only have to have one. But if you throw in the hard cases. Right. Yes, I would agree. I think the $312 is well within the range of it. And I don't have a magic number to give you, you know, what multiplication to get near $400 or what percentage of it. There's no case except for that one, that AAH vending case, which, you know, I'm not trying to pass it off on you. This is an impound case. But here that was one where it was a licensing case. It was an evaluation of, you know, analysis of the license and application. And they were charging a fee that was, I believe, five times more than what the actual cost was. So, you know, I'm not saying that that would apply here. But I think, you know, if it was five times and $400, we'd be looking at it justifying $80 and that would be enough. I'm not saying that. But I think when we're up to $300 or even more compared to $400, I think we're well within the case of the AHA and vending ratios. Counsel, I'd like to go back to Carter. Yes. And I would like to read you three statements from Carter. If you have it handy, I'll let you follow along where they are in the decision. Paragraph 24, the majority says, charging such fees because or merely because a vehicle is used in connection with an offense is arbitrary unless there is some reason to treat such offenses differently than offenses in which a vehicle is not used. Paragraph 26, to the extent the cities receive funds from fees charged by the state, fees from that duplicate those funds are not reasonably related to the purpose of recovery costs. Paragraph 43, although the rational basis test is deferential, we hold that it is not deferential enough to allow a court to assume that a fee is a reasonable approximation of a city's actual costs because the city made an implicit finding to that effect and otherwise would render the rational basis test toothless. So you're telling me that those holdings by the Carter case are not applicable in this case? That's right. Well, I would say the rationale, if I followed you with the last one, that one was a little harder to follow as to what the court was saying on that. But definitely about the duplication, I disagree with that. We don't have duplication in this case, both factually or legality-wise, between the statutes. And our standard of review here is de novo. De novo on the facts, correct. I'm sorry, de novo on the constitutional issue. Yeah, de novo on the constitutional issue, which is the main thing. But on the facts, then, I think it would be manifest way to the evidence. Has Mr. Murphy raised issue on the order as far as the findings of fact? No. At least I, well, I guess I don't want to speak for him. I guess in his brief he does take issue that he might have, that the judge might have, although he did compliment him, I think he did also mention that he thought the judge overcalculated some of those numbers where I don't think that's the case at all. I think the record reflects that he was actually shy on a lot of them. But I think that's, you know, again, wisdom on his part, especially for the review that he knew was coming. I go back to the Carter, though, and I was making that point earlier, and I don't know that it really addresses what you said. It's just not about the vehicle. It is about all of it. And this kind of goes to when he was saying about, well, $200, $400, there's no difference there. Well, you can tell, you look at it, the statute or the ordinances, and which ones were $200 tend to be the lesser violations, the lesser crimes, the lesser serious versus the $400. And I think that is the difference and why. But that's also part of it because it's not just about the vehicle. It is about the crime. It is about not the vehicle only but also the violator of it, you know, and that's what the statute allows. The statute allows recruitment just not involving the towing of the vehicle, storing of the vehicle, but it also allows stuff related to the violator themselves straight out of their administrative and processing car investigation, arrest, detention of the violator. So it's not just about the vehicle itself. No duplication here, especially as I touched base earlier, there are several instances where there is no DUI fund. So if there's a $400 fee, a towing fee for reckless driving, attempting to elude an officer, drag racing, misdemeanor speeding, hit and run, you know, fatalities investigation, accident reconstruction, all those cases, there's no DUI fund in those. There's no DUI involved with them. And so there can be no duplication, at least factually. Comparing the tow fee ordinance and the tow fee statute on one hand, DUI fund over here, even the purposes and legality of those statutes are different. So on the Carbondale side of it all, the tow fees, you have to have a vehicle towed. Well, not on the DUI fund side. The vehicle does not have to be towed in order for there to be a DUI fund. If I get into DUI and my driver is in the other seat and they arrest me, take me away, well, they don't have to tow the car. The owner is sitting right there, or the owner maybe comes on the scene later on. The owner takes possession of the vehicle. There's no towing of the vehicle. There's still a DUI fund, though. With the Carbondale ordinance and the tow fee statute, numerous violations. They don't have to be alcohol or drug related. I just ran through a bunch of them. No alcohol, no drug related. DUI fund, though, on the other hand, it's got to be pretty much, you look at it, it's got to be alcohol or drug related for there to be a DUI fund. For the tow fee ordinance and the tow fee statute, there is no mandate on how to spend the money, on how to use the money. Now, Carbondale self-regulated itself and said, we're going to use ours for police and equipment. But, I mean, a lot of these other cities that you've seen, they don't have that ordinance, and it's not in the statute. Whereas with the DUI fund, it has to be used. It can be used for a variety of purposes, but they all tend to be alcohol or drug related. With the Carbondale ordinance and the tow fee ordinance, the fee is paid up front. And the measuring stick is administrative processing costs associated with the investigation, arrest, detention of the offender. Here we are with the offender. Or the removal and palm and storage of the vehicle. That money is paid up front. With the DUI fund statute, the fee is paid after the fact. Only if the DUI is pled to or a conviction. And, you know, if they're given a DUI and they plead it down to disorderly conduct or something like that, no DUI fund money on there. So when you compare the two, the purposes are totally different. The outcomes are different between the two. And I think that's why I think the legislature, you have to presume they knew what they were doing. You know, and allowing the cities to have the DUI funds. I'm sorry, allowing them to have the tow funds. So I know in the brief, too, as mentioned by Mr. Murphy about a fee, there is a fee that is reasonable that in theory they could do that. I think he mentions that on page four. But I don't know. The case has never been about what range it is. It's always been an all or nothing proposition. If we're talking about a range of fee that's reasonable, we haven't been arguing about it much. At least it wasn't so much in the trial. And if there is a reasonable amount of fee that is somewhere in the range here, then it seems to me that they wouldn't be entitled to a whole refund of $200 or $400, as the case would be. If $100 is reasonable on a $200, then we'd only be talking a refund of $100 or so. Go ahead and finish your comment. I'm done. Thank you. Before we let you go, any questions, final questions? No other questions. Thank you. All right. Thank you, counsel. Thank you. Mr. Murphy, go right ahead with your rebuttal. Judge, you have to have a vehicle for there to be an impoundment ordinance. Without a vehicle involved, there is no impoundment ordinance. That's what this ordinance is about. And the purpose of the ordinance, it says on its face, is to recoup the cost that is required to impound or seize and remove the vehicle. Well, you always have to remove the vehicle. I mean, you've got to get it off the public highways. That's not hard. Everything else that we've been talking about is something that has to be done in every case. Of course you have to write a report. If Mr. Leahy had been stumbling out of sticks and got into a fight on Illinois Avenue, everything would still have to be done except his vehicle wouldn't have been impounded or it wouldn't have been removed. All this talk about offenders has nothing to do with this. This ordinance is directed at the owner of the vehicle, someone who is faultless. You could say, well, I would never loan my car to somebody that would commit some type of traffic offense. Good luck with that. Most of these level one offenses are the slightest traffic offenses. Look in the appendix to my original brief and read the sworn answers to the request to admit. They were driving with a license expired. How about that? Your license is expired and they seize your vehicle and hit you with a $400 impoundment fee and arrest you, driving without a valid license. All of the cases for 2019 were that. The rest of this is make believe, surmise. It's not there. The evidence is there. That's what it was. The idea that we are going to charge the owners of vehicles the entire cost of doing what police officers have to do every day.  What they get to do is set off that discrete period of time that involves the arrest and the impoundment. You can imagine any case you want, but what is the investigation? Let's just go to the statute. Well, you're going down and you call in and say, this license is expired. That's the investigation. You stop the car. All right, then you arrest the driver if you happen to have the bad luck to be in Carbondale. You pull him out of the car. You call the towing company and you take their car. It's over. Once that vehicle is impounded and removed, the purpose of the ordinance is fulfilled. And that's not a $400 job. Now, the last thing I want to leave you with, and I think this is very important, the level one impoundment fees, non-DUI, driving without a license, driving with license expired, no valid license, they are slightly more than 50% of the level one fees. And the DUI impoundment fees are slightly less than 50%. But it is Carbondale that took the position that we know these are fines because they treat level one and level two traffic fees just exactly the same, exactly the same. And because they do that, we know they're not fees because if they were fees, they would have to be fair. But these were fines. These were fines. Well, we now know they're not fines. This court said so. They're not fines. They're fee for service provided. And to hit somebody with a $400 fine or $400 fee for the same service that other owners pay for the very same thing, it's at E100 of the record. That is their position. And that's why I asked these officers if there was any difference. And they all said no. That's irrational. That's irrational on its face. It's irrational in every case. The ordinance itself is irrational. It's irrational to charge people money for something that they've already been paid for by the state. I'm through. Thank you, Mr. Murphy. Any final questions before we go any further? None any further. Thank you. Thank you, counsel. Obviously, we will take the matter under advisement. We will issue an order in due course.